NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TODD HEZLITT, *Appellant.*

No. 1 CA-CR 25-0544
FILED 8-12-2026

Appeal from the Superior Court in Navajo County
No. S0900CR202500086
The Honorable Jon H. Saline, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph Newberg
*Counsel for Appellee*

The Rigg Law Firm, PLLC, Pinetop
By Brett R. Rigg
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

_____

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Michael J. Brown joined.

_____

**P A T O N**, Judge:

¶1            Todd Hezlitt appeals his conviction and sentence for failure of a sex offender to notify the sheriff of a change of address. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2            We view the evidence in the light most favorable to upholding the jury's verdict. *State v. Lee*, 189 Ariz. 608, 615 (1997).

¶3            In 2013, Hezlitt registered as a sex offender after pleading guilty to two counts of sexual conduct with a minor. As a registered sex offender, when Hezlitt entered an Arizona county for at least 72 hours, he was required to register with the sheriff of that county. And every August (his birth month), he was required to report in person to the sheriff's office to confirm his registration information, including his current residence.

¶4            Hezlitt confirmed his current registration information with the Navajo County Sheriff in April 2024 and August 2024, and listed his current residence as a parcel north of Heber, Arizona, with no listed address (the "Heber Property"). The Heber Property was in a remote area with no access to public utilities.

¶5            In October 2024, a sheriff's deputy went to the Heber Property to verify Hezlitt lived there. He observed no signs that anyone lived there. There were two uninhabited structures on the property—one appeared to be an unfinished cabin and the other was a storage shed. The unfinished cabin had no visible furniture, stove, clothing, or heat source inside. There were also no tire tracks or footsteps near any of the structures. There was a motor home on the property, but its door was missing, and it was filled with so much "stuff" that a person could not live in it.

¶6            The deputy returned to the Heber Property in January 2025 and, although he observed tracks indicating an ATV had driven straight through without stopping, Hezlitt was not there, and there were still no

signs that anyone was living there. The unfinished cabin was in the same condition it had been in October, with no utilities, heat source, stove, or furniture. The fire pit contained the same garbage the deputy observed during his prior visit. The deputy knocked on the structure doors and called out for Hezlitt but received no answer. Soon after this second visit with no sign of Hezlitt, the State charged him with the failure of a sex offender to notify the sheriff of a change of address.

¶7        Hezlitt learned of the charge and contacted the sheriff's office to say he did not understand why he was being charged, and claiming he had registered his current address. The deputy spoke to Hezlitt over the phone and informed him that registering an address was insufficient; he actually had to live at the registered address.

¶8        The deputy returned to the Heber Property in April 2025 and saw signs that someone was now living there. There were distinct tire tracks and footprints showing steady travel in and out of the property. Someone also installed a wood stove, grill, sink, and solar panels that had not been there during prior visits. Hezlitt again did not answer when the deputy knocked on the door, but the deputy observed a cat in the cabin.

¶9        Before trial, the State moved to admit the sentencing minute entry from Hezlitt's conviction as evidence that Hezlitt was required to register as a sex offender, which contained information about his two sexual conduct with a minor convictions. The court found the unfair prejudice of the nature of the underlying convictions substantially outweighed its probative value when all the State had to prove was that Hezlitt was required to register as a sex offender. As such, the court ordered the minute entry redacted to exclude the nature of the underlying convictions. After redaction, the minute entry contained the following language: "IT IS ORDERED that the defendant shall register as a sex offender pursuant to the Notice of Sex Offender Requirements."

¶10        At trial, the State presented the deputy's testimony, photographs, and the body-worn camera footage from his visits to the Heber Property as evidence that Hezlitt did not live at his registered residence and did not inform the sheriff's office that he was living at a different residence. Hezlitt moved for a judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20, arguing the prosecution did not present evidence sufficient to support a conviction. The court denied the motion, reasoning that the evidence at least created fact questions that the jury should decide.

¶11            The court instructed the jury on the definition of "residence" as follows:

> "Residence" means:
>
> (a) The person's dwelling place, whether permanent or temporary.
>
> (b) If the person is transient and does not spend at least three nights in any location or place within a thirty-day period, the geographic areas of the county where the person spends the nights.

¶12            During deliberations, the jury asked the court how long a person has to be at a location for it to be considered their residence. The court instructed the jury to refer to the definitions in the jury instructions. The jury followed up on its question and asked: "And does the three nights have to be consecutive to qualify as permanent or temporary?" The court and the parties recognized that, based on that follow-up question, the jury was conflating subsections (a) and (b) of the definition of "residence." In other words, it seemed the jury mistakenly thought that if a person's residence was only temporary, they were also transient. To cure this confusion, the court suggested giving the jury the definition of "transient" with a note that a person either has a dwelling place, whether permanent or temporary, or they are transient; they cannot both be true at the same time. Hezlitt's counsel expressed concern that giving the definition of transient may further confuse the jury and "muddy the waters," but he did not expressly object and agreed that the court's note to the jury was an accurate statement of the law. The court gave the clarifying instruction without objection.

¶13            The jury convicted Hezlitt and the court sentenced him to two years and nine months in prison. Hezlitt timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶14            Hezlitt raises three issues on appeal. He first argues the court erred in denying his Rule 20 motion for a directed verdict because the State did not present sufficient evidence to establish the elements of the charged offense. He next argues the State violated the court's order that the State not give testimony or evidence of the nature of Hezlitt's sexual conduct with a minor convictions. Finally, he argues the court erred by providing the jury a clarifying instruction on the definition of "transient."

## I. Sufficient evidence supports Hezlitt's conviction.

**¶15** Hezlitt contends the State did not present evidence that he moved to a different address, only that there was uncertainty regarding his residency. He argues the State "presented no evidence identifying another residence for [Hezlitt]," and that absent such evidence, "the jury could not determine whether [Hezlitt] moved at all." Hezlitt also argues the State's case is undermined by the deputy's testimony that Hezlitt was living at the Heber Property in April 2025.

**¶16** We review the sufficiency of evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). We will find evidence is sufficient to support a conviction when "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16. Our role is not to reweigh the evidence, rather we "view the evidence in the light most favorable to sustaining the conviction," and resolve "all reasonable inferences" against the defendant. *State v. Lee*, 189 Ariz. 590, 603 (1997). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation omitted).

**¶17** Registered sex offenders are required to notify the sheriff "[w]ithin seventy-two hours, . . . after moving to or from the person's residence." A.R.S. § 13-3822(A). The sex offender must also inform the sheriff of whether the new residence is "temporary or permanent." A.R.S. § 13-3822(A). And "residence" means where the person lives, whether temporary or permanent. A.R.S. § 13-3822(F)(4). So registered sex offenders must notify the sheriff after changing residences, even if the sex offender only lives at the new residence on a temporary basis.

**¶18** The State was thus required to prove three elements: (1) Hezlitt was required to register as a sex offender, (2) Hezlitt moved either to or from a residence in Navajo County, even on a temporary basis, and (3) Hezlitt did not inform the Navajo County Sheriff's Office of his change of residence. A.R.S. § 13-3822(A). The State provided sufficient evidence as to all three elements.

**¶19** Hezlitt was required to register as a sex offender after his plea to and resulting sentence on two counts of sexual conduct with a minor. This was supported by the redacted sentencing minute entry from Hezlitt's convictions and is not disputed on appeal. Hezlitt also does not dispute

that he did not inform the sheriff's office of a change of residence because he insists that he did not move.

¶20        There is sufficient evidence that Hezlitt moved from his registered residence in Navajo County without informing the Navajo County Sheriff's Office. The evidence showed that the deputy twice visited his listed residence, the Heber Property, between October 2024 and January 2025, and there was no sign that Hezlitt lived there. During both visits, Hezlitt was not present at the Heber Property, and there were no footprints or consistent tire tracks that would be present if Hezlitt lived there. Further, the unfinished cabin was in the same uninhabited state from October 2024 to January 2025. The Heber Property did not have a stove, heat source, furniture, or water source during both visits. This evidence was sufficient to establish, at minimum, a reasonable inference that Hezlitt moved away from the Heber Property from October 2024 to January 2025, then back to the Heber Property sometime after January 2025. And under Section 13-3822(A), Hezlitt was required to inform the sheriff's office if he moved away from his registered address, even if only on a temporary basis. We resolve "all reasonable inferences" against Hezlitt, including that he moved away from the Heber property from October 2024 to January 2025. *See Lee*, 189 Ariz. at 603.

¶21        We are unpersuaded by Hezlitt's argument that the State was required to show evidence of the residence he moved to after leaving the Heber Property. Section 13-3822(A) requires no such showing; again, the State must only show that Hezlitt either moved to or from a residence in the county. Hezlitt insists that, absent a showing of where he moved to, the State's evidence only established that Hezlitt was not present during the two visits. This mirrors the defense that Hezlitt raised at trial, but as the superior court correctly reasoned, this was a factual issue for the jury to decide. *See State v. Allen*, 253 Ariz. 306, 335, ¶ 72 (2022) ("[W]here reasonable minds may differ on the inferences drawn by the evidence, the trial court should not grant [a] defendant's Rule 20 motion.").

¶22        The jury was free to consider Hezlitt's assertion that, despite the lack of signs of habitation at the Heber Property, he was living there and just happened to be absent during the deputy's visits. But the jury was also free to conclude, as it ultimately did, that Hezlitt was not living at the Heber Property based on the deputy's testimony, photos, and body-worn camera footage presented at trial. The jury also considered evidence that Hezlitt's wife lived in Wilcox, that he registered his vehicle to an address in Wilcox, and listed his mailing address as an address in Wilcox. Hezlitt further contends that testimony about signs of habitation later supports the notion

that Hezlitt did not abandon the property and establishes reasonable doubt regarding whether he lived there during the initial visits. He essentially asks us to reweigh the evidence on appeal, which we will not do. *Lee*, 189 Ariz. at 603. Sufficient evidence supports Hezlitt's conviction.

## II. The State did not violate the court's order by referring to Hezlitt as a "sex offender" during trial.

**¶23** Hezlitt argues that the court's order precluding the State from "offering testimony or evidence of the nature of the underlying offenses in any way" prohibited the State from referencing Hezlitt's status as a registered sex offender at trial. Hezlitt does not dispute that he was a registered sex offender, only that the State should not have been allowed to call him a sex offender during the trial. Because Hezlitt did not object to the State's use of the term "sex offender" at trial, we review only for fundamental error. *State v. Murray*, 250 Ariz. 543, 547, ¶ 11 (2021). Hezlitt must establish that error exists, that the error was fundamental, and that the error was prejudicial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). To the extent Hezlitt now suggests that the prosecutor's use of the term "sex offender," constitutes prosecutorial error, that "inquiry is consistent with— if not subsumed within—*Escalante*'s framework for fundamental error review." *Murray*, 250 Ariz. at 548, ¶¶ 12, 15.

**¶24** The State's use of the term "sex offender" did not violate the court's order. The court's order, in relevant part, prohibited the State from "offering testimony or evidence [of] the nature of the underlying offenses." The court found that the underlying sexual conduct with a minor convictions were substantially outweighed by any probative value. Under Hezlitt's interpretation of that order, the State's use of the term "sex offender" informed the jury of the nature of the underlying offenses by informing them that Hezlitt "had prior sex offenses."

**¶25** But the fact that Hezlitt is a sex offender was an element and necessary preliminary of the crime charged; even more, the term "sex offender" appears in the name of the charge itself. *Cf. State v. Ferrero*, 229 Ariz. 239, 242, ¶ 15 (2012). The court recognized in its order when it said that "[c]ertainly, the fact that there exist two felony convictions that require sex offender registration is a fact that can be elicited and discussed by the State, and the redactions . . . allow for that information to be provided to the jury to decide the facts." The court's order also admitted the sentencing minute entry in Hezlitt's underlying offense, which ordered Hezlitt to register as a "sex offender" and did not redact the term "sex offender." Evidence of Hezlitt's status as a sex offender was not evidence of the nature

of the underlying offenses, it was evidence necessary to prove an essential element of the crime charged: the "failure of a registered *sex offender* to notify the sheriff of a change of address."

¶26  Hezlitt urges us to find that the State's use of the term "sex offender" was "inflammatory rhetoric designed to invoke fear and moral outrage" in the jury. Not so. The State said in its opening statement that "[Hezlitt] is a registered sex offender," asked witnesses to confirm that Hezlitt was a registered sex offender, and elicited general testimony about the process by which sex offenders register and verify their address. None of these instances were used in an inflammatory or provocative manner, and more importantly, they did not elicit testimony about the nature of Hezlitt's underlying offenses against children as the court's order sought to prevent. Even Hezlitt's counsel used the term "sex offender" multiple times when questioning the witnesses at trial. The State's use of the term "sex offender" did not violate the court's order.

¶27  Hezlitt also takes issue with the deputy's testimony answering the prosecutor's question about the purpose of the registration requirement, namely that the "history of sex offender registration goes back to situations where children went missing or were molested and the parents would say, well, if I had known there was a sex offender living across the street from me, my child would not have been left playing out there." But this response provided general background information about the registration statute and made no link to Hezlitt. In short, this comment did not reveal the nature of Hezlitt's underlying convictions, did not tie back to Hezlitt, and also did not violate the court's order precluding mention of Hezlitt's sexual conduct with a minor convictions. We discern no error.

### III. The court did not abuse its discretion in giving a clarifying instruction on the definition of "transient."

¶28  Hezlitt argues the court erred by giving a clarifying instruction to the jury on the statutory definition of "transient." He claims there is no evidence in the record that he was transient and that the clarifying instruction "gave the jury an entirely different basis in which to convict Hezlitt." We review the trial court's decision to give a clarifying instruction for an abuse of discretion, but we assess the legal adequacy of the instructions de novo, viewing them in their entirety. *State v. Rushing*, 260 Ariz. 180, 192, 196, ¶¶ 33, 51 (2025).

¶29  The issue here centers on the definition of "residence" under Section 13-3822(F)(4) and the definition of "transient" under subsection

(F)(6).  Residence is defined as either "(a) [t]he person's dwelling place, whether permanent or temporary," or (b) "[i]f the person is transient and does not spend at least three nights in any location or place within a thirty-day period, the geographic areas of the county where the person spends the nights."  A.R.S. § 13-3822(F)(4).  At first, the court instructed the jury only on the definition of "residence."

¶30        After receiving these instructions, the jury asked the court how long a person has to be at a location in order for it to be considered their residence.  The court instructed the jury to refer to the definitions in the jury instructions.  But this did not resolve the jury's question, and it followed up by asking: "And does the three nights have to be consecutive to qualify as permanent or temporary?"  The court and parties recognized that based on the jury's follow-up question, it was conflating subsections (a) and (b) of the definition of "residence."  The court then suggested giving the jury the definition of "transient" with a note that a person either has a dwelling place, whether permanent or temporary, or they are transient; they cannot both be true at the same time.  Although Hezlitt's counsel initially expressed concern that providing the definition of "transient" could "muddy the waters," he ultimately agreed that it was a correct statement of the law.

¶31        A court abuses its discretion in deciding whether to give clarifying instructions if the court's decision was "clearly untenable, legally incorrect, or amount[ed] to a denial of justice."  *Rushing*, 260 Ariz. at 192, ¶ 33 (citation omitted).  And the court "should fully and fairly respond to requests from deliberating juries when it is clear they are confused by the provided instructions."  *State v. Champagne*, 247 Ariz. 116, 138, ¶ 67 (2019).  The instructions the court provided initially were legally correct and supported by the record, and Hezlitt does not contest either point.  But based on the jury's questions, the jury did not fully understand the issues.  In such cases, it is the duty of the court to take steps to ensure the jury understands the law before the jury makes a decision.  *See id.*; *Rushing*, 260 Ariz. at 196, ¶ 51.

¶32        Hezlitt also does not argue the court gave the incorrect definition of "transient."  Instead, he argues that giving this definition allowed the jury to "make assumptions that Hezlitt was transient, something completely unsupported in the record."  But the distinction between the registration requirements of transient sex offenders and sex offenders who have a dwelling place was brought up multiple times during trial.  Not only that, but the word "transient" appeared in the definition of, and the court's instruction on, the term "residence."  A.R.S. § 13-

3822(F)(4)(b).    Supplying this clarifying instruction under these circumstances was therefore supported by the record, and it correctly stated the law.  The court did not abuse its discretion.  *See State v. Fletcher*, 149 Ariz. 187, 191 (1986) (finding no reversible error where supplemental instruction did not misstate the law).

¶33    Viewing the jury instructions as a whole, the instructions "adequately set forth the law applicable to the case."  *State v. Teran*, 253 Ariz. 165, 171, ¶ 16 (App. 2022).  We find no error.

## CONCLUSION

¶34    We affirm.

